IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD KUPFERSCHMIDT, #M25549, )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>)<br>WEXFORD HEALTH SOURCES, )<br> INC. et al., )<br>)<br>Defendants. ) | No. 20-cv-1071-SLD |

**MOTION FOR SUMMARY JUDGMENT WITH MEMORANDUM OF LAW**

NOW COMES Defendant, MEAGHAN WILKEY LEIPOLD, by and through her attorney, KWAME RAOUL, Attorney General of the State of Illinois, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 7.1(D), hereby submits her motion for summary judgment and memorandum of law, and states the following:

### I.   INTRODUCTION

Plaintiff, an inmate at Pontiac Correctional Center, filed suit against Defendants Meaghan Wilkey Leipold, and Wexford Health Sources, who are separately represented. Plaintiff alleges that Defendants failed to provide adequate medical care and delayed diagnostic testing for a ruptured calf during a flag football game, in violation of the Eighth Amendment. (Doc. 6). Plaintiff also stated a *Monell* claim against Defendant Wilkey Leipold based on her alleged employment status as a Wexford Health Sources employee. Defendant Wilkey Leipold now requests that the Court grant her motion for summary judgment and dismiss Plaintiff's claims against her, as Plaintiff has not established that Defendant Wilkey Leipold provided inadequate medical care or was responsible for any delay in care in violation of the Eighth Amendment, and cannot establish a

*Monell* claim against her. Additionally, Defendant Wilkey Leipold is entitled to qualified immunity.

## II.    UNDISPUTED MATERIAL FACTS[1]

1. Plaintiff was an inmate at Pontiac Correctional Center during the timeframe relevant to this complaint. (Doc. 1)

2. On November 25, 2018, Plaintiff injured his calf in a flag football game. (Doc. 1; Exhibit 1, Deposition of Plaintiff, at p. 24).

3. Plaintiff was taken to the healthcare unit by an officer. (Ex. 1, at p. 24).

4. Plaintiff has no medical training. (Ex. 1, at p. 15).

5. Plaintiff was seen by Defendant Wilkey Leipold on November 25, 2018 when he arrived at the healthcare unit. He told her what happened and "she wrote some stuff down." Defendant Wilkey Leipold told Plaintiff that he would see Dr. Tilden in a few days, and also told Plaintiff that he had cramps and to drink water. (Ex. 1, at p. 87).

6. Defendant Wilkey Leipold was employed by the State of Illinois as a corrections nurse at Pontiac Correctional Center from August 2018 to April 2019. (Exhibit 2, Declaration of Meaghan Wilkey Leipold, at ¶ 1).

7. Defendant Wilkey Leipold completed an offender injury report and progress note when she saw Plaintiff on November 25, 2018. (Ex. 1, at p. 105; Ex. 2, at ¶¶ 4; 11; Exhibit 3, medical records[2] at pp. 176; 267; 286).

---

[1] Defendant disputes some facts included herein, but accept these facts as true for the purpose of this motion because all facts must be construed in favor of the non-moving party. *TAS Distributing Co. v. Cummins Engine Co.*, 491 F. 3d 625, 630 (7th Cir. 2007).

[2] The attached exhibit reflects Plaintiff's medical records as sent by the facility after the ransomware attack on the Office of the Illinois Attorney General. Plaintiff's medical records were previously sent to him in discovery.

8. Defendant Wilkey Leipold looked at Plaintiff's leg, told him to pull his pant leg up, and looked at his calf. (Ex. 1, at p. 89).

9. Defendant Wilkey Leipold called Dr. Tilden and gave a report on Plaintiff. Whenever a nurse calls a doctor for further direction or instructions, they give a report on a patient based on their notes and observations. If the doctor gives a nurse orders regarding patient care, the order is read back to the doctor for confirmation that it is accurate. Wilkey Leipold read back orders given to her by the doctor over the telephone. The orders given to her by the doctor were to have Plaintiff continue medications as prescribed, refer him to nurse practitioner sick call on November 27, 2018 for follow-up and evaluation; provide a lay-in permit with meals for five days; and have Plaintiff follow up PRN—which means as needed. Defendant Wilkey Leipold received no instructions that Plaintiff was to be transported to the hospital. (Ex. 2, at ¶ 9); Ex. 3 at p. 176.

10. Plaintiff was given a lay-in permit for five days by Defendant Wilkey Leipold. (Ex. 1, at p. 33; Ex. 2, at ¶ 10; Ex. 3, at p. 266)

11. Plaintiff was not given any medication because he was already on pain medication at the time. (Ex. 1, at p. 89; Ex. 2 at ¶ 15).

12. Plaintiff was seen by a nurse practitioner on November 27, 2018. (Ex. 1, at p. 26; Ex. 3 at p. 178).

13. Plaintiff stated that he was suing Defendant Wilkey Leipold because she told him he had cramps and to drink a lot of water. Plaintiff believes only a nurse practitioner or doctor should diagnose him with cramps. Plaintiff also stated that had Defendant Wilkey Leipold called Dr. Tilden and told him how severe the injury was, he "probably woulda been sent straight as emergency to one of the outside hospitals." (Ex. 1, at p. 87).

14. Plaintiff stated the harm that Defendant Wilkey Leipold caused him was that "she felt [he] had cramps." (Ex. 1, at p. 94).

15. A nurse practitioner or doctor can prescribe medication "or take further steps to getting [him] help." Ex. 1, at p. 92; *see* Ex. 2 at ¶ 3).

16. Plaintiff saw Defendant Wilkey Leipold in the morning med line on December 4, 2018, and asked her to document how swollen and bruised his leg was. Defendant Wilkey Leipold told him that she would not see him, and told him to sign up for sick call and then she would talk to him. (Ex. 1, at pp. 97-98).

17. In a med line, 150 to 250 inmates line up in a housing unit to receive their prescribed medications. Patient assessments and treatment are generally not given in the med line. (Ex. 2, at ¶ 13).

18. Plaintiff was seen by Dr. Tilden on December 5, 2018 and received x-rays of his calf and ankle . (Ex. 1, at p. 61; Ex. 3, at p. 179).

19. Plaintiff believed Defendant Wilkey Leipold worked for Wexford Health Sources. (Ex. 1, at p. 86).

20. Plaintiff was not able to identify any Wexford policies other than his feeling that they have a low-cost cutting budget to deny a certain amount of inmates from going to the hospital. (Ex. 1, at p. 72).

21. Plaintiff saw an orthopedic surgeon for his calf injury in 2019. (Ex. 1, at p. 53). The orthopedic surgeon recommended physical therapy and advised Plaintiff to come back for an MRI if therapy did not work. (Ex. 1, at pp. 53-54; *see* Ex. 3, at p. 136).

22. Defendant Leipold cannot order diagnostic testing and imaging; does not perform diagnostic testing and imaging; and does not have any involvement in the approval, denial, or

scheduling of inmates to receive these tests. A medical doctor must order these tests. (Ex. 2, at ¶ 3; *see e.g.*, Ex. 1, at p. 92).

23. Plaintiff was scheduled for an MRI in September 2020, but it had to be rescheduled because he did not get the results of his coronavirus test in time for the appointment. (Ex. 1, at pp. 84-85).

24. As of the date of his deposition, Plaintiff has not had an MRI and would like to get an MRI done to see what is wrong with his leg. (Ex. 1, at p. 81).

### III. STANDARD OF REVIEW

Summary judgment is proper if pleadings, depositions, and admissions on file, together with affidavits, if any "show that there is no genuine issue as to any material fact and the moving party is entitled to summary judgment as a matter of law." C*elotex Corp. v. Catrett*, 477 U.S. 317, 322, (1986). Failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial. *Id.* At 323. A party opposing summary judgment bears the burden to respond by setting out specific facts showing a genuine issue for trial. *See* Fed. R. Civ. P. 56(e). If the non-moving party does not meet their burden, summary judgment should be entered against the non-movant. *Id.* Factual material put forth by a movant must be countered with more than speculation or possibilities at the summary judgment stage. *McCarty v. Menards*, 327 F.R.D. 177, 187 (N.D. Ill. 2018).

### IV. ARGUMENT

**A. Plaintiff has not established that Defendant Wilkey Leipold was deliberately indifferent to serious medical needs by providing constitutionally inadequate medical care.**

Plaintiff has not established that Defendant Wilkey Leipold was deliberately indifferent to Plaintiff's serious medical needs. "Every claim by a prisoner that he received inadequate medical treatment is not a violation of the Eighth Amendment." *Petties v. Carter*, 836 F. 3d. 722 (7th Cir.

2016). To determine whether a prisoner has established an Eighth Amendment claim, a two-step analysis must be conducted. First, the Court must determine whether the plaintiff suffers from an objectively serious medical condition. Second, the Court must determine whether the defendant was deliberately indifferent to that condition. *Id.* An objectively serious medical condition is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a layperson would see the need for medical treatment. *Foulker v. Outgamie County*, 394 F. 3d 510, 512 (7th Cir. 2005). For purposes of this motion, Defendant does not dispute that Plaintiff suffers from a serious medical need, although Plaintiff does not know what medical condition he has yet. (*See* UMF ¶ 24).

The second component of the medical deliberate indifference analysis is a subjective one. A prisoner must establish that the defendant acted with a sufficiently culpable state of mind. *Greeno v. Daley*, 414 F. 3d 645, 653 (7th Cir. 2005). This means the defendant must know of and disregard an excessive risk of serious harm to inmate health and infer this risk of harm through facts they are aware of. *Id.* at 653. However, medical malpractice in the form of improper treatment or incorrect diagnosis does not state an Eighth Amendment claim. Negligent care does not rise to the level of deliberate indifference. *Steele v. Choi*, 82 F. 3d 175, 178 (7th Cir. 1996). Nor does a disagreement about the course of treatment "between a prisoner and his doctor, or even between two medical professionals about the proper course of treatment." *Pyles v. Fahim,* 771 F. 3d 403, 407 (7th Cir. 2014).

Plaintiff also cannot establish that Defendant Wilkey Leipold was deliberately indifferent to Plaintiff's serious medical needs by providing inadequate medical treatment on November 25, 2018. Plaintiff alleges that he is suing Defendant Wilkey Leipold because she diagnosed him with cramps and told him to drink water, and that only doctors or nurse practitioners should make this

diagnosis. (UMF ¶ 13). Plaintiff alleges that Defendant Wilkey Leipold caused him harm through this diagnosis. (UMF ¶ 14). As established by *Steele*, even if Defendant Wilkey Leipold did diagnose Plaintiff with cramps and this was somehow improper, this is negligence at best, not a constitutional violation, and disagreement about a course of treatment does not give rise to deliberate indifference. Plaintiff also alleges that if Defendant Wilkey Leipold had called the doctor, he may have been sent to the emergency room sooner. (UMF ¶ 13). However, speculation is not sufficient evidence at the summary judgment stage. *McCarty*, 327 F.R.D. at 177. Plaintiff's claim that he may have been sent to the doctor sooner is not based on any facts and is speculation. A doctor saw no need to have Plaintiff taken to the hospital, and any disagreement or dissatisfaction that he has about this course of treatment does not give rise to a constitutional violation in any event.

Plaintiff has no medical training. (UMF ¶ 4). Nevertheless, in the context of laypersons, a medical professional's treatment must be "such a substantial departure from accepted judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment." *Petties,* 836 F. 3d at 729 (*citing Estate of Cole v. Fromm*, 94 F. 3d 254, 261-62 (7th Cir. 1996)). Obviousness of a risk in the medical context requires specialized medical expertise to understand the consequences of a particular course of treatment. *Petties*, 836 F. 3d at 729. Here, Defendant Wilkey Leipold called the doctor, and gave a report on Plaintiff's condition based on her observations and her notes. (UMF ¶ 9). Defendant also looked at Plaintiff's leg. (UMF ¶ 8). The doctor then gave his orders for treatment to Defendant Wilkey Leipold, which she followed. UMF ¶ 9). Defendant gave Plaintiff a five day lay-in as instructed, which Plaintiff does not dispute. (UMF ¶ 10). Plaintiff was not given pain medication during this time because he was already on pain medications, which is also undisputed. (UMF ¶ 11). Defendant cannot even order medication. (UMF ¶ 15). Plaintiff was also seen in nurse practitioner sick call on November 27, 2018. (UMF

¶ 12). Plaintiff's treatment remained the same until he was given an x-ray by a medical doctor on December 5, 2018. (UMF ¶ 18). Defendant Wilkey Leipold did all that she had been instructed to do or had the authority to do. Plaintiff cannot establish that Defendant Wilkey Leipold substantially departed from acceptable judgment or practice as to demonstrate that there was an obvious risk that she was deliberately indifferent to, or that his treatment was inadequate. At best, Plaintiff may have a malpractice claim against a doctor if he can show that the doctor's treatment was somehow inappropriate. As such, Plaintiff's claim against Defendant Wilkey Leipold should therefore be dismissed.

### B. Defendant Wilkey Leipold was not deliberately indifferent to a serious medical need nor did she delay medical treatment on December 4, 2018.

Plaintiff also alleges that Defendant Wilkey Leipold would not document how bruised and swollen his leg was and told Plaintiff that she was not going to see him and to sign up for sick call when he was seen in the med line on December 4, 2018. (UMF ¶ 16). However, this also does not constitute an Eighth Amendment. Plaintiff was seen by the doctor the following day. (UMF ¶ 19). Even if Plaintiff were to allege that these decisions amounted to some sort of medical delay in treatment, Plaintiff cannot show that this one-day delay is actionable under the Eighth Amendment or caused any harm to him.

The Court has said that delays are common in prison settings with limited resources and that the seriousness of the condition and ease of providing treatment must be considered to determine whether a delay is tolerable. *Petties*, 836 F. 3d at 736. Plaintiff wanted Defendant to document swelling and bruising in his leg at the time he saw her on December 4, 2018. (UMF ¶ 16). Plaintiff must present independent evidence that a delay exacerbated the injury or prolonged unnecessary pain. *Williams v. Leifer,* 491 F. 3d 710, 716 (7th Cir. 2007). Plaintiff has no such evi-

dence, and therefore cannot establish that Defendant Wilkey Leipold's conduct was deliberate indifference through any delay in medical treatment, and his Eighth Amendment claim against her should be dismissed.

### C. Defendant is not liable under *Monell* because she is not a Wexford employee.

Plaintiff cannot establish Defendant Wilkey Leipold's liability based on any *Monell* claim. Plaintiff thought Defendant was a Wexford employee when he brought his claim against her. (UMF ¶ 19). However, Defendant was a state employee during the time period relevant to this complaint. (*see* UMF ¶ 6). *Monell* applies only to entities that are not considered part of the state government for Eleventh Amendment purposes. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 691 (1978). Therefore, as a state employee, Defendant is not subject to Plaintiff's *Monell* claim.

Moreover, to establish a *Monell* claim, Plaintiff must have evidence that "a Wexford policy was the direct and moving force behind his constitutional violation." *Pyles,* 771 F. 3d at 409. But for the reasons discussed above, no constitutional violation has been shown in this case. Accordingly, even if Defendant was a Wexford employee, Plaintiff's *Monell* claim against her would still fail.

### D. Defendant Wilkey Leipold is entitled to qualified immunity.

Under 42 U.S.C. § 1983, a public official is entitled to qualified immunity from money damages or liability if their conduct does not violate any clearly established constitutional rights. *Harlow v. Fitzgerald*, 457 U.S. 800, 815 (1982). In *Saucier v. Katz*, 533 U.S. 194, 200 (2001), the United States Supreme Court mandated a two-step sequence for resolving government officials' qualified immunity claims. First, a court must decide whether the facts that a plaintiff has alleged make out a violation of a constitutional right. *Pearson v. Callahan*, 129 S. Ct. 808, 815-16 (2009)

(citing *Saucier*, 533 U.S. at 201). "Second, if the plaintiff has satisfied this first step, the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct." *Pearson*, 129 S. Ct. at 816. The burden of establishing the existence of such a clearly established constitutional right is on plaintiff. *McGrath v. Gillis*, 44 F.3d 567, 570 (7th Cir. 1995) (citing *Rakovich v. Wade*, 850 F.2d 1180, 1209 (7th Cir. 1988)). 'Clearly established' for purposes of qualified immunity requires an inquiry into whether a reasonable official would understand that what he is doing violates that right. *Wilson v. Layne*, 526 U.S. 603, 615-17 (1999). The words "clearly established" cannot be used by stating constitutional rights in the most general possible terms; the right must be sufficiently particularized to put defendants on notice that their conduct is unlawful. *Azeez v. Fairman*, 795 F.2d 1296, 1301 (7th Cir. 1986) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)).

Since Plaintiff cannot establish that Defendant's conduct violates his Eighth Amendment rights, he has failed to satisfy the first step of the qualified immunity analysis. Nor, in any event, is there any authority that would clearly establish a right to Plaintiff's preferred course of diagnosis and treatment. Therefore, Plaintiff's claims are barred by qualified immunity.

## V.    CONCLUSION

Plaintiff cannot establish that any treatment she provided to him was inadequate or anything other than an incorrect diagnosis at best, which does not create a constitutional claim as a matter of law. Plaintiff cannot establish any delay in treatment on the part of Defendant Wilkey Leipold, and his Eighth Amendment medical deliberate indifference claim against her fails for these reasons. Nor can Plaintiff cannot attribute liability to her through a *Monell* claim. Defendant Wilkey Leipold is also entitled to qualified immunity in this case, as Plaintiff has not shown that

preferred treatment or any disagreement with the course of treatment he has received for his calf injury is a constitutional violation.

WHEREFORE, Defendant requests that this honorable Court grant her motion for summary judgment and enter judgment in her favor.

    Respectfully submitted,

    MEAGHAN WILKEY LEIPOLD

    Defendant,

    KWAME RAOUL, Attorney General of the State of Illinois,

    Attorney for Defendant,

By: s/Azariah Jelks
    Azariah Jelks, #6324111
    Assistant Attorney General

IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| RICHARD KUPFERSCHMIDT, #M25549, )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>)<br>WEXFORD HEALTH SOURCES, )<br> INC. et al., )<br>)<br>Defendants. ) | No. 20-cv-1071-SLD |

**CERTIFICATE OF SERVICE**

    I hereby certify that on June 10, 2021, the foregoing document, ***Motion for Summary Judgment with Memorandum of Law***, was electronically filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing(s) to the following:

    Joy C. Syrcle       jsyrcle@cassiday.com

and I hereby certify that on the same date, I caused a copy of the foregoing document to be mailed by United States Postal Service, to the following non-registered participant(s):

    Richard Kupferschmidt, #M25549
    Pontiac Correctional Center
    Inmate Mail
    PO Box 99
    Pontiac, IL 61764

                                                Respectfully submitted,

                                                  s/Azariah Jelks
                                                Azariah Jelks, #6324111
                                                Assistant Attorney General
                                                Attorney for Defendant
                                                Office of the Attorney General
                                                500 South Second Street
                                                Springfield, Illinois  62701
                                                (217) 557-0261 Phone
                                                (217) 782-8767 Fax
                                                Email:  Azariah.Jelks@illinois.gov
                                                GenLawSpringfield@gmail.com